Dock McNEELY, Petitioner–Appellant,

v.

Lou BLANAS, Respondent–Appellee.

No. 02–15860.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 2003.

Opinion Filed April 18, 2003.

Amended July 17, 2003.

---

**38.** *See Kilroy v. Ruckelshaus,* 738 F.2d 1448, 1452 (9th Cir.1984).

**39.** *See United States v. Grayson,* 879 F.2d 620, 625 (9th Cir.1989).

Opinion, 326 F.3d 1056, withdrawn.

Daniel J. Broderick, Chief Assistant Federal Public Defender, Sacramento, CA, for petitioner-appellant.

Craig S. Meyers, Deputy Attorney General, Sacramento, CA, for respondent-appellee.

Before NOONAN, TASHIMA, and WARDLAW, Circuit Judges.

## ORDER

The opinion filed on April 18, 2003, and reported at 326 F.3d 1056, is withdrawn and replaced by the amended opinion filed concurrently with this order. With these amendments, the panel has voted to deny the petition for panel rehearing. Judges Tashima and Wardlaw vote to deny the petition for rehearing en banc and Judge Noonan so recommends. The full court has been advised of the petition for rehearing en banc, but no judge of the court has called a vote on en banc rehearing. The petition for panel rehearing and the petition for rehearing en banc are denied. *See* Fed. R.App. P. 35(f). No further petition for rehearing may be filed.

Respondent-appellee's application to consider matters outside of the record and his motion for judicial notice, both filed concurrently with respondent-appellee's petition for rehearing, are denied.

## OPINION

TASHIMA, Circuit Judge.

Dock McNeely ("McNeely" or "Petitioner"), a California pretrial detainee, appeals the district court's dismissal of his 28 U.S.C. § 2241 habeas petition.[1] McNeely contends that his constitutional speedy trial rights are being denied because he has been in custody since April 1998 without a preliminary hearing or trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

## BACKGROUND

Petitioner is a defendant in a pending California state felony case. He was arrested on April 13, 1998, and was charged two days later with lewd and lascivious conduct upon a child under the age of 14 and failing to register as a sex offender in violation of Cal. Pen.Code §§ 288, 290. Petitioner had not yet received a preliminary hearing or trial as of the conclusion of

---

1. The parties characterize the petition as falling under 28 U.S.C. § 2254. However, because Petitioner is a pretrial detainee, he is not being held "pursuant to the judgment of a State court." 28 U.S.C. § 2254. Therefore, his claim falls under 28 U.S.C. § 2241. *See Braden v. Judicial Circuit Court*, 410 U.S. 484, 503, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (Rehnquist, J., dissenting) ("Section 2254 pertains only to a prisoner in custody pursuant to a *judgment of conviction* of a state court; in the context of the attempt to assert a right to a speedy trial, there is simply no § 2254 trap to 'ensnare' petitioner, such as the court below felt existed. The issue here is whether habeas corpus is warranted under § 2241(c)(3); that section empowers district courts to issue the writ, *inter alia,* before a judgment is rendered in a criminal proceeding."); *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir.2001) (explaining that a state court defendant attacking his pretrial detention should bring a habeas petition under 28 U.S.C. § 2241); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir.1998) (same).

briefing in this case.[2]

The case has been repeatedly continued due to a combination of competency hearings, replacements of counsel, a period from February 19, 1999, to August 19, 1999, when McNeely was found to be incompetent and committed to a state hospital, the disqualification of two judges, and numerous other continuances. The precise reasons for many of the continuances are unclear due to Respondent's failure to provide a complete and certified state court record, the cryptic notations which constitute much of the purported state court record, the absence of any key to the extensive abbreviations in the "minutes," the absence of transcripts for the vast majority of the various hearings, and the absence of any record for the period between December 31, 2000, and March 26, 2002.

Petitioner filed state court petitions for relief, most of which were summarily denied. On October 20, 1998, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, raising the failure to hold a preliminary examination within the statutory time period, which required that he be released on his own recognizance. On October 29, 1998, the court of appeal summarily denied McNeely's petition. On December 31, 1998, Petitioner filed an ex parte application for an order directing issuance of a writ of mandate, prohibition, or other extraordinary

relief in the California Court of Appeal. Among other things, he raised the failure to conduct a preliminary examination or trial within the statutorily-required time limit. On January 7, 1999, the court of appeal denied that petition. On February 3, 1999, Petitioner filed a petition for review in the California Supreme Court, raising among other things the lack of a preliminary examination. On February 17, 1999, the state supreme court summarily denied his petition for review. On January 6, 2000, Petitioner filed a habeas petition with the Sacramento County Superior Court, raising the lack of a preliminary hearing and the violation of his speedy trial rights. On February 8, 2000, the superior court dismissed the petition because he had not substantiated his allegations and because he had a *Marsden*[3] motion pending in his underlying criminal case. On May 22, 2000, the trial court denied Petitioner's motion to dismiss for violation of his speedy trial rights. On May 25, 2000, Petitioner filed a petition for writ of prohibition in the state court of appeal, alleging that the superior court erred in denying his motion to dismiss and to release him from custody pursuant to Cal. Pen.Code § 859(b). On June 8, 2000, the court of appeal denied the petition.

Petitioner, acting *pro se*, filed a petition for writ of habeas corpus in federal district court on June 21, 2000. After the initial petition was dismissed without prejudice

---

**2.** The Reply Brief was filed on October 25, 2002. The district court considered the period of delay only up to the time of its ruling. We therefore limit our review to that period. We note, however, that no trial has occurred even at the time of oral argument, at which Respondent was unable to report what had happened to McNeely since December 2000, the last date of any entry in the state court "minutes" contained in the record. Respondent's counsel reported at oral argument that he believed the state court had "suspended" proceedings pending the outcome of this ha-

beas proceeding and conceded that McNeely was still incarcerated in legal "limbo." In other words, no proceedings had apparently taken place in McNeely's felony case in the prior 27 months.

**3.** So named after *People v. Marsden*, 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970), it is a motion permitting a defendant to articulate why he is dissatisfied with his court-appointed counsel and why counsel should be relieved.

due to the presence of unexhausted claims, Petitioner filed an amended petition, excluding the unexhausted claims, on September 25, 2000. In his answer, Respondent agreed that Petitioner has exhausted his remedies on the issues raised in the amended petition. On January 11, 2002, the magistrate judge filed his report recommending that the state court complaint against McNeely be dismissed and that he be released without prejudice to the institution of civil commitment proceedings. Both parties filed objections. On March 26, 2002, the district court granted Respondent's motion to dismiss the amended petition, dismissing McNeely's speedy trial claim. McNeely timely appeals.

## STANDARD OF REVIEW

■ We review the district court's denial of a habeas petition *de novo*. *See Coalition of Clergy v. Bush*, 310 F.3d 1153, 1157 (9th Cir.2002), *cert. denied*, ── U.S. ──, 123 S.Ct. 2073, 155 L.Ed.2d 1060 (2003). The district court's findings of fact are reviewed for clear error. *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.2000).

## DISCUSSION

### A. Sixth Amendment Right to a Speedy Trial

■ In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated a four-part test to determine when government delay has abridged the Sixth Amendment right to a speedy trial. The factors to be considered include: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice caused by the delay. No single factor is necessary or sufficient. *Id.*

As explained further below, the length of delay, McNeely's assertion of his right to a speedy trial, and the prejudice caused by the delay all weigh in favor of finding a violation of McNeely's right to a speedy trial. Further we hold that Respondent has the burden of explaining the reasons for the delay. Because Respondent has utterly failed to provide a comprehensible record and even failed to comply with the magistrate's order to file transcripts of relevant hearings, the reasons-for-delay factor also weighs in McNeely's favor. Alternatively, we find that although Respondent failed to supply a fully comprehensible record, the scant record that is available is adequate to demonstrate that McNeely's constitutional rights have been violated by delays that can be attributed to Respondent.

We examine each factor *seriatim*.

### (1) Length of the Delay

■ The district court found the length of the delay (three years at that time) to be substantial.[4] Further, given the length of the delay, prejudice is presumed and triggers a *Barker* inquiry. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

### (2) Reasons for the Delay

The Supreme Court has repeatedly held that the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner and that this duty requires a good faith, diligent effort to bring him to trial quickly. *See Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (stating that courts should inquire whether the state "discharge[d] its 'constitutional duty to make a diligent, good-faith effort to bring [the defendant to trial]'" (quoting *Smith v.*

---

**4.** That delay has now extended to more than five years.

*Hooey,* 393 U.S. 374, 384, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969))); *Dickey v. Florida,* 398 U.S. 30, 38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) ("[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.").

▮ Numerous lower courts have, thus, held that the prosecution bears the burden of explaining delay in bringing an accused to trial. *See e.g., United States v. Brown,* 169 F.3d 344, 349 (6th Cir.1999) (stating that government had the burden of proving that defendant was actually culpable in causing the delay by evading arrest on the indictment, or was aware of the issuance of the indictment and intentionally hid himself from law enforcement agents); *United States v. Graham,* 128 F.3d 372, 374 (6th Cir.1997) (holding that the state has the burden to explain pretrial delay); *Jones v. Morris,* 590 F.2d 684, 686 (7th Cir.1979) (finding that where reason for 23–month delay did not clearly appear in the record, "the absence of any reason for the delay should weigh against the state"); *Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir. 1975) (stating that where the record does not demonstrate reason for the delay and the state has provided no reasonable explanation, the court will "assume that there is no justifiable reason and weigh this factor heavily against the state"); *Georgiadis v. Superintendent, Eastern Correctional Facility,* 450 F.Supp. 975, 980 (S.D.N.Y.), *aff'd,* 591 F.2d 1330 (2d Cir. 1978) (stating that where actions of the defendant do not account for entire period, "the responsibility for these unexplained delays should rest with the state"). Although *Barker* did not explicitly identify the burden of proof for pretrial delay, it refers to the reason for the delay as "the

reason the government assigns to justify the delay." 407 U.S. at 531, 92 S.Ct. 2182. We likewise hold that the prosecution bears the burden of explaining pretrial delays.

▮ In contrast to unexplained circumstances, when the record demonstrates the reason for the delay, the following principles guide attribution of the delay to either the defense or the prosecution. A deliberate attempt to delay proceedings to hamper the defense counts heavily against the government. *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id.* On the other hand, delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument. *United States v. Goeltz,* 513 F.2d 193, 197 (10th Cir.1975).

Respondent contends that all of the delay, except for three minor continuances, were due either to McNeely's decisions, competency hearings, or other reasonable delays, such as plea negotiations.[5] The district court attributed the majority of the delay to Petitioner's actions and competency issues:

> Delays attributable to competency proceedings, to the commitment proceedings, commitment of petitioner to a state hospital so that he could return to competency, to petitioner's three disqualifications of the trial judge, or to petitioner's many attempts, mostly successful, to relieve counsel and obtain new counsel, who in turn required time to pre-

---

**5.** Nonetheless, when asked at oral argument how much of the delay was attributable to Petitioner, Respondent's counsel could provide only estimates and stated that it was "hard to determine" the total amount of time.

pare, account for virtually all of the delay in the case up to the filing of the petition. None of the delay is attributable to bad faith conduct on the part of the prosecution. Indeed, delays that resulted from action or requests of the prosecution are inconsequential.

The district court thus found that the delay was not unconstitutional because most of it was due to Petitioner's conduct and incompetency. The district court clearly erred because the record does not support such a finding.

It is impossible accurately to discern what happened in state court because of the absence of transcripts of contested hearings. The record before the district court and this court does not include the state trial court transcripts for most of McNeely's court appearances. Instead, it includes only some cryptic handwritten notes, purporting to be the Clerk's minutes of the hearings, submitted out of order as attachments to Respondent's answer. It is unclear whether these correspond to the State's official record and whether they are complete. No key to the abbreviations is provided and the parties speculate as to their meaning. The parties disagree as to what happened at numerous hearings. Significantly, they dispute the reliability of notations in the record that purportedly reflect waivers of time. While the minutes contain many undecipherable abbreviated entries, they do clearly indicate that the state court denied McNeely's repeated requests to obtain copies of hearing transcripts. The magistrate judge in this case ordered Respondent to provide "any and all transcripts or other documents relevant to the determination of issues presented in the application." [6] Nonetheless, Respondent did not produce transcripts for numerous hearings as to which it disputes Petitioner's version of events. Given Petitioner's lengthy incarceration, his proceeding *pro se* before the district court, the State's refusal to provide him with requested transcripts, and the parties' disputes over the meaning of numerous minute entries, the State's failure to provide an adequate record is particularly egregious. Because, however, Respondent bears the burden to explain the delays, this ultimately works to his own disadvantage. Respondent has failed to carry his burden.

Even on the scant record that is available, we conclude that the district court's findings were clearly erroneous. Respondent attributed 11 continuances to plea negotiations and the district court adopted Respondent's version of the facts. The minute entries of the proceedings, however, make no reference whatsoever to plea negotiations, except one entry for April 15, 1998, indicating that Petitioner's case was continued to April 30 for "PNC," which Respondent asserts is a Plea Negotiation Conference. The other continuances which Respondent and the district court attribute to plea negotiations all occurred on dates with entries showing only "SC," which presumably refers to Status Conferences. Despite alleging in its answer that continuances for plea negotiations occurred on these dates, Respondent conceded at oral argument that this was "conjecture." The record does not support a finding that these continuances were attributable to plea negotiations.[7]

6. The magistrate judge's order is similar to the requirement in § 2254 cases that the State, which is in the best position to do so, provide the habeas court with the state court record. Rules Governing § 2254 Cases in the U.S. Dist. Courts, Rule 5 ("There shall be attached to the answer such portions of the transcripts as the answering party deems relevant.").

7. Even assuming that these delays were attributable to plea negotiations, it is not clear

Respondent argues that Petitioner repeatedly waived time.[8] For several of the dates identified by Respondent, the minutes actually indicate that Petitioner refused to waive time. For the rest, Petitioner challenges the accuracy of the abbreviated notations indicating time waivers. Except for one hearing date, Respondent failed to produce transcripts demonstrating the waiver. Given that Respondent has the burden to explain the delay and failed to comply with the magistrate judge's order to produce all relevant transcripts, his showing is inadequate. Respondent cannot rely on abbreviated, handwritten, unauthenticated state court records, the meaning of which is "conjecture," to demonstrate a knowing and intelligent waiver of a constitutional right. *See Barker*, 407 U.S. at 525–26 & n. 4, 92 S.Ct. 2182 (noting that waiver is defined as an "intentional abandonment of a known right or privilege," indicating that "[c]ourts should indulge every reasonable presumption against waiver," and noting further that waiver cannot be presumed from a silent record but must be demonstrated on the record or with evidence (citations omitted)). Respondent failed to carry his burden of explaining the reasons for the delay. Therefore, this factor weighs in favor of finding a violation of McNeely's right to a speedy trial.

Alternatively, we hold that, even presuming the "minutes" are accurate, the record demonstrates numerous delays that cannot be attributed to Petitioner's actions or any reason other than court backlog or prosecutorial neglect, which are attributable to the State.[9] The record also contains other significant, unexplained delays. In addition, the prosecution dismissed the action on August 10, 2000, three days before the 60-day speedy-trial deadline under state law and re-filed the complaint the next day, starting the sixty-day clock over. Respondent provides no reasonable explanation for this action and it appears to be an obvious, deliberate tactic to avoid the speedy-trial deadline. Among other periods, the following delays are attributable to the prosecution:

- *60-day delay:* From April 30, 1998, to June 30, 1998, proceedings were continued five times for "SC," possibly Status Conferences. On May 15, 1998, there is a notation of "PTW," possibly indicating a Pre-Trial Waiver, but there is no transcript to corroborate this. Petitioner disputes that he waived the time. Even if he did waive the time, this would only subtract three days from the 60-day delay.

---

8. To the extent Petitioner's counsel waived time, this would not necessarily be attributed that these periods would not count as unexcused delay. The federal Speedy Trial Act contains no provision expressly excluding plea negotiation periods from its statutory deadlines. And this Circuit has held that plea negotiations are not excludable under the catch-all "ends of justice" category of the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A). *See United States v. Ramirez–Cortez*, 213 F.3d 1149, 1156 (9th Cir.2000). While this is not a Speedy Trial Act case, this reasoning is persuasive, particularly given the broad "ends of justice" category. We find it unnecessary, however, to resolve this issue.

to McNeely due to his repeated disagreements with counsel and assertions of his rights. *Cf. United States v. Lam*, 251 F.3d 852, 858 (9th Cir.2001) (finding defendant bound by his attorney's actions, but noting that defendant can preserve his rights to a speedy trial when he expressly asserts his rights and his actions contradict his counsel's). We also find it unnecessary to resolve this issue.

9. Petitioner also argues that his prior counsel's challenges to his competency were "stalling tactics," and that one attorney "falsely" accused him of incompetence. Even if true, these delays cannot be attributed to the State.

- *48–day delay:* After being found incompetent and committed to a state mental hospital, Petitioner was found to have met the necessary discharge criteria on August 19, 1999. However, he was not returned to court until October 6, 1999. Respondent has not explained this delay.
- *125–day delay:* After Petitioner's counsel expressed doubts about his competency on November 8, 1999, two doctors submitted uncontradicted letters on December 6, 1999, indicating that Petitioner was competent. Nonetheless, the court ordered a competency hearing which was repeatedly continued until April 11, 2000. The record does not demonstrate that an evidentiary hearing ever took place, but on April 11, 2000, the court found Petitioner competent. Respondent offers no explanation for this four-month delay.
- *Six–Month Delay:* From April 11, 2000, to October 11, 2000, there was no question about Petitioner's competency. Nonetheless, during this time, hearings were repeatedly continued. On April 11, 2000, the proceedings were continued to April 14 for the appointment of counsel. The minutes for April 14 indicate "PTW (10 days)." Petitioner disputes the accuracy of this notation and Respondent has provided no reliable evidence of a knowing and intelligent waiver. (Even if the waiver notation is accurate, no hearing was commenced within the 10–day waiver period, by April 24, 2000.) Rather, on April 18 a status conference was set for May 8, 2000. On May 8, 2000, a status conference was set for May 22, 2000. On May 22, 2000, Petitioner's motion for dismissal based on speedy-trial violations was denied and a status conference was set for June 5, 2000. On June 5, 2000 the court denied Petitioner's request for reconsideration of its denial of his motion to dismiss. A preliminary hearing was set for June 14, 2000. The record for this date explicitly notes that Petitioner

did not waive time. Parenthetically, the minutes note "over Δ's objections."

On June 14, 2000, the record indicates "PH—DA req. cont." suggesting that the State requested a continuance. The record states "no TW," presumably indicating a refusal to waive time. The record on June 15, 2000, states "PH— waived." Even assuming that the record accurately reflects waivers, Petitioner had no preliminary hearing between April 24, 2000, and June 15, 2000.

On June 15, 2000, a trial date was set for August 8, 2000. The notations in the record indicate that the 60–day statutory deadline would be reached on August 14, 2000. The State dismissed the charges on August 10 and re-filed on August 11. The court continued Petitioner's motion to be released on his own recognizance until the next day, and held him without charging documents until the State could re-file its complaint. When the State re-filed the charges, the notations indicate that the 60–day trial clock started over. This appears to be a deliberate attempt to avoid statutory speedy-trial protections. Respondent has provided no alternative explanation.

On August 23, 2000, a hearing was set for August 25, 2000. The August 25, 2000, hearing set a trial date of September 21, 2000. The notations indicate that the 60th day would be reached on October 24, 2000. Various entries indicate that the trial date was continued. On October 12, 2000, the court granted a defense challenge to the judge and the case was reassigned. On this day, counsel also questioned Petitioner's competency. No transcript of this hearing is provided to indicate the basis of the competency challenge.

- *December 13, 2000 to March 26, 2002:* The judge suspended the criminal pro-

ceedings on December 13, 2000, scheduling a competency trial for February 14, 2001. No record has been provided to show what has happened to McNeely since that time. The district court's order states that the court held a competency hearing on February 15, 2001, and found McNeely incompetent based on this counsel's representations and the previous opinion of a doctor who examined him in December 1998, *i.e.*, more than two years earlier. The basis of this finding, however, is unclear because no records of any proceedings after the December 2000 indication that McNeely would have a hearing in February 2001 are a part of the district court record. The parties' briefs state that, as of the completion of briefing, the competency trial had not been held and was "pending." The district court states that, after February 15, 2001, "[i]t is unclear from the record whether there have been any further proceedings." The district court's order was dated March 26, 2002, more than a year after the last record of McNeely's status in the state court system.

Respondent has offered no explanation for this delay from December 13, 2000, to March 26, 2002. This period alone warrants a finding of serious delay.

These unaccounted-for periods of delay, which cannot be attributed to Petitioner, total 29 months and five days, or almost two and one-half years.

### (3) Defendant's Assertion of the Right

The district court did not indicate the weight, if any, it assigned to this factor, but found that, although Petitioner had asserted his rights, "he also took steps to derail the trial process by twice disqualifying the trial court at precisely the point when the case was ready for trial and he had been deemed competent." The record contains no evidence indicating that the motions were frivolous, made in bad faith, or designed to "derail" the proceedings. Although a defendant's other conduct can undermine assertions of the right, here both motions were granted, indicating that they had merit. *Cf. United States v. Loud Hawk*, 474 U.S. 302, 314–15, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (indicating that the filing of frivolous and unsuccessful motions undermines assertion of the right). The only conclusion one could draw in favor of the State is that delays due to these disqualifications cannot be counted against the State; however, this circumstance addresses the second factor, attribution of the fault for the delay, not whether McNeely asserted his speedy trial rights. Given Petitioner's repeated assertions of his right, this factor too weighs in his favor.

### (4) Prejudice

■ The presumption that pretrial delay has prejudiced the accused intensifies over time. *See Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686. The Supreme Court has specifically recognized three forms of prejudice: " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Id.* at 654, 112 S.Ct. 2686 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182). The last is considered to be the most serious because it "skews the fairness of the entire system." *Id.*

■ A finding of prejudice does not depend on the defendant's ability to particularize the prejudicial effects of the delay. *Id.* at 655, 112 S.Ct. 2686. Although in *Doggett* the accused failed affirmatively to show that the delay weakened his defense, the Court did not require "affirmative proof of particularized prejudice." *Id.* The Court thus stated:

[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant acts, and its importance increases with the length of delay.

*Id.* at 655–56, 112 S.Ct. 2686 (citation omitted).

In this case, the defense has been hindered by the passage of time, particularly given the nature of the charges which are most likely proved or rebutted through testimonial evidence. In addition, Petitioner indicates that he has been forced to undergo treatment with medication that impairs his memory, thus aggravating the impact of the delay on his ability to defend himself. Finally, the vagueness of the charges, which identify a period of four months in which the alleged conduct took place, but do not specify particular dates or events, also compounds the difficulty of proving a defense after the passage of much time. Petitioner has also been subjected to oppressive pretrial incarceration. The prejudice factor weighs strongly in Petitioner's favor.

Balancing these factors, we conclude that McNeely has been denied his Sixth Amendment right to a speedy trial.[10] The district court clearly erred in finding otherwise.

## CONCLUSION

Based on the foregoing, we reverse the decision of the district court and remand with directions to grant the petition for writ of habeas corpus. Because his Sixth Amendment right to a speedy trial has been violated, Petitioner shall be immediately released from custody with prejudice to re-prosecution of the criminal charges. *See Strunk v. United States*, 412 U.S. 434, 439–40, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (holding that violation of Sixth Amendment speedy trial rights requires dismissal). This order, however, shall be without prejudice to the institution of such civil commitment proceedings as may be appropriate under state law to be commenced within 30 days of the issuance of the mandate.

**REVERSED and REMANDED.**

---

**10.** We do not address McNeely's due process claim because it is not included in the certificate of appealability ("COA"). *See* Fed. R.App. Proc. 22(b); 28 U.S.C. § 2253. Moreover, it is unnecessary to the disposition of this case. We note, however, that the applicability of the COA requirement to an appeal in a habeas case brought by a state pretrial detainee under § 2241 is an open question in this Circuit. *Cf. Forde v. U.S. Parole Comm'n,* 114 F.3d 878 (9th Cir.1997) (holding that a § 2241 petitioner in federal custody need not obtain a COA as a prerequisite to appeal). Other circuits have held that § 2241 petitioners in state custody must comply with the COA requirement. *Montez v. McKinna,* 208 F.3d 862, 867 (10th Cir.2000); *Stringer v. Williams,* 161 F.3d 259, 262 (5th Cir.1998).