This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                        **NO. 28,501**

**RAUL ZAPATA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela-Shepherd, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant Raul Zapata was convicted of aggravated assault on a household member with a deadly weapon, and he appeals. He contends in his appeal that (1) there was insufficient evidence to support his conviction; (2) the district court erred in failing to declare a mistrial after there was reference to Defendant shooting himself; (3) he received ineffective assistance of counsel; (4) the district court erred in failing to strike a potential juror for cause; and (5) his constitutional right to a speedy trial was violated. We affirm.

**SUFFICIENCY OF THE EVIDENCE**

In reviewing for the sufficiency of the evidence, we determine whether substantial evidence "of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994) (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We "resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* We will not reverse merely because there is contrary evidence supporting acquittal because the jury is entitled to reject the defendant's version of the facts. *Id.*

2

The jury was instructed that to find Defendant guilty, the State had to prove beyond a reasonable doubt that:

    1.    [Defendant] pointed a gun at [the victim] and threatened [the victim] by making threatening statements . . .;

    2.    [Defendant's] conduct caused [the victim] to believe [Defendant] was about to intrude on [her] bodily integrity or personal safety by touching or applying force to [the victim] in a rude, insolent or angry manner;

    3.    A reasonable person in the same circumstances as [the victim] would have had the same belief;

    4.    [Defendant] used a gun, an instrument or object which, when used as a weapon, could cause death or very serious injury;

    5.    [The victim] was a household member;

    6.    [Defendant's] act was unlawful; and

    7.    This happened in New Mexico on or about the 15th day of August, 2005.

Defendant contends that the State's evidence was insufficient to prove that he pointed a gun at the victim, that a reasonable person in the victim's position would have feared for her safety, and that the victim was a household member.

As to Defendant's use of and pointing a gun at the victim, Defendant argues that the police took the statement of a witness after the incident and that the statement did not mention a gun. However, the existence of evidence that is contrary to the verdict does not support reversal because the jury is entitled to reject a different

3

version of the facts. *Id.* ¶ 19. We do not reweigh the evidence. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogation on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. The victim testified that, after she told Defendant that she did not want to get back together with him, Defendant took a gun from his truck and pointed it at her. This evidence was sufficient to support a finding that Defendant pointed a gun at the victim.

The victim further testified that she was frightened, thought she was going to die, and ran to her bedroom and called the police. Police officers testified that the victim was crying and shaking when they spoke with her at the scene. Given the testimony that Defendant pointed a gun at the victim, the jury could reasonably have believed that a reasonable person in the victim's circumstances would have been similarly frightened.

With regard to Defendant's claim that the victim was not a household member for the purposes of his conviction, at the time of the acts in this case, the definition of "household member" included "a person with whom a person has had a continuing personal relationship." NMSA 1978, § 30-3-11 (1995) (amended 2010). The victim testified that she and Defendant dated for a year. Her testimony was sufficient evidence from which the jury could conclude that she was a "household member" for purposes of the Crimes Against Household Members Act, NMSA 1978, § 30-3-10 to

4

-16 (1995, as amended through 2010), under which Defendant was charged.

**MOTION FOR MISTRIAL**

The parties stipulated that evidence, including "any reference to shots," pertaining to Defendant having shot himself would be excluded. When the victim testified, she stated that after Defendant pointed the gun at her and she hid in her bedroom, she "heard bullets." Defendant objected and moved for a mistrial. The district court denied the motion, finding that the statement was not unfairly prejudicial. It gave the jury a curative instruction that the jury should disregard the victim's statements concerning hearing bullets.

On appeal, Defendant argues that the district court erred in denying his motion for a mistrial. He contends that he was prejudiced because the natural inference from the information was either that Defendant fired the gun, "which implies that [Defendant] was willing to fire the gun at the police, or that the police fired, which would imply that [Defendant's] actions warranted such a response." We review the district court's action for abuse of discretion. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. *Id.*

The district court did not abuse its discretion in determining that the testimony was not prejudicial and in not granting a mistrial. Defendant's claim of prejudice is

speculative. Moreover, the district court's instruction cured any error that may have occurred. *See State v. Flanagan*, 111 N.M. 93, 95, 801 P.2d 675, 677 (Ct. App. 1990) ("The general rule in New Mexico is that error in the admission of evidence is cured by striking the evidence and admonishing the jury to disregard it.").

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant contends that his trial attorney made several errors that denied him effective assistance of counsel. In an ineffective assistance of counsel claim, Defendant has the burden to demonstrate a prima facie case that (1) "counsel's performance fell below that of a reasonably competent attorney," and (2) "the deficient performance prejudiced the defense." *State v. Hester*, 1999–NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). Defendant must establish that his attorney's errors were so serious that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Although Defendant asserts several ways in which he claims his attorney was constitutionally ineffective, he only argues potential prejudice for four of such claims. We address only those claims because Defendant has made no effort to establish prejudice for the others.

Defendant first alleges that his trial attorney provided ineffective assistance by failing to call Manuel Rojo as a witness. The police report indicated that Rojo

6

observed the incident at issue but did not state that Rojo witnessed any fighting, threats, or use of a gun. Defendant states that Rojo's testimony would have been helpful to his case, but he does not state what that testimony would have been. We cannot assume that Rojo's testimony would have been helpful to Defendant merely because the police report was silent on specific facts.

Moreover, Defendant had the burden to establish that his attorney failed to act in a reasonably competent manner. *Id.* Defendant asserts that his attorney did not meet this standard because he did not ensure either Rojo's presence or that of an officer with whom Rojo spoke. Instead, Defendant's attorney cross-examined witnesses who had not spoken to Rojo. In making the determination of whether an attorney has acted in a reasonably competent manner, we do not second guess an attorney's trial strategy and tactics. *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992). Without knowing the substance of Rojo's observations and potential testimony, we cannot say that the attorney's actions did not meet a standard of reasonable competence. Indeed, the police report was merely silent as to Rojo's observations. If Rojo made observations that were not included in the police report, his testimony could have been damaging to Defendant. We will not second guess the attorney's tactics.

Defendant further contends that his attorney fell below the required standard by

7

failing to call police officers who were present at the scene of the incident and who wrote reports as witnesses. He implies that he was prejudiced because he asserts that the officers' reports would have contradicted the victim's testimony. However, Defendant does not state the content of the officers' reports. As a result, we cannot gauge whether Defendant's attorney acted improperly or if there was any prejudice if he did.

Defendant also claims that his attorney was ineffective by failing to introduce the tape recording of the victim's emergency phone call to the police in evidence because the jury asked to hear it and it undermined the victim's testimony. But Defendant does not state the content of the call or the manner in which it would undermine the victim's testimony.

The only other allegation for which Defendant asserts any element of prejudice is his attorney's failure to request an adequate competency evaluation or, in the alternative, because he filed a motion to determine competency. He claims prejudice because the motion caused delay in his trial. However, Defendant does not set forth how the delay impaired his defense.

None of Defendant's arguments establishes a prima facie case of ineffective assistance of counsel on the record before us. However, we do not foreclose any action by Defendant by way of a writ of habeas corpus. *See State v. Martinez,* 1996-

NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

**CHALLENGE OF POTENTIAL JUROR**

During voir dire, one potential juror stated that he was a pacifist with "'a severe dislike of all weapons.'" Upon further questioning, he did not specifically state that he could be completely fair in addressing the facts of the case. After Defendant sought to challenge the juror for cause, the district court and defense counsel further questioned the juror. In the questioning by defense counsel, the juror stated that he could "be fair and impartial, regardless of a weapon being present." The district court refused to excuse the juror for cause, and Defendant exercised a peremptory challenge with respect to the potential juror.

Defendant argues that the district court erred in failing to excuse the juror for cause. We review for an abuse of discretion. *State v. Rackley*, 2000-NMCA-027, ¶ 9, 128 N.M. 761, 998 P.2d 1212.

Even though the potential juror initially qualified his ability to be fair and impartial by stating that he "would hope" that he could be, he ultimately stated that he could be fair and impartial without qualification. Defendant claims that the repeated questioning affected the juror's response. However, at no time did the juror

respond in a manner that indicated that he could not be fair and impartial; his response was only qualified to state that he hoped that he could be. Considering all of his responses, we cannot say that the district court abused its discretion in refusing to disqualify him for cause. *See id.* ¶ 11 (stating that our focus on review of whether a juror is able to function impartially is on the presence or absence of evidence that the juror is "unwilling or unable to decide the case based on the evidence adduced at trial and the instructions given by the trial court").

**RIGHT TO SPEEDY TRIAL**

Defendant argues that his right under the United States and the New Mexico Constitutions to a speedy trial was violated by the delay in the trial of his case. We apply the four-part test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) in evaluating potential violations of the constitutional right to a speedy trial. *State v. Coffin*, 1999-NMSC-038, ¶ 55, 128 N.M. 192, 991 P.2d 477. In evaluating a claim, this Court will look to the length of the delay, the reason for the delay, the defendant's assertion of his or her right, and the prejudice to the defendant. *Id.* In our analysis of those factors, however, we do not agree with Defendant that there was a violation.

We first look to the length of the delay. We accept Defendant's argument that the twenty-two-month delay is presumptively prejudicial and therefore weighs in

Defendant's favor. *See id.* ¶ 56.

We do not agree with Defendant as to the reason for delay. Although the State has the responsibility to bring a defendant to trial, in this case, the reasons for the substantial part of the delay are attributed to Defendant changing his attorney four times in the course of the case and the time required for Defendant's competency evaluation. Defendant, through his first attorney, requested a stay to determine competency, which the district court granted on May 3, 2006, and did not lift until March 12, 2007. Defendant stipulated to the only State request for a continuance.

Defendant argues that he should not be held responsible for the delay for his competency evaluation. In support, he relies on *McNeely v. Blanas*, 336 F.3d 822, 831 (9th Cir. 2003), and *State v. Stock*, 2006-NMCA-140, ¶¶ 20-21, 140 N.M. 676, 147 P.3d 885. *McNeely* addressed the negligence of the prosecution in causing and in failing to explain delays in excess of nearly two and one-half years. 336 F.3d at 831. The Ninth Circuit did address a delay caused by the court's stay to conduct a competency hearing. *Id.* at 830-31. In December 2000, the lower court ordered the stay and set a competency hearing for February 2001. *Id.* The court's records were unclear as to whether the hearing was held and what occurred thereafter. *Id.* at 831. The Ninth Circuit faulted the prosecution for a fifteen-month delay due to the stay for a competency evaluation because it did not offer any explanation for the delay. *Id.*

In *Stock*, this Court held that it would not hold the defendant responsible for the delay caused by his defense counsel's ignoring the case. *Stock*, 2006-NMCA-140, ¶¶ 20-21. The delay was from May 2001 to October 2003. *Id.* ¶ 20. An evaluation was completed in August 2001, but it was not provided to the state or the court. *Id.* At a May 2002 status conference, defense counsel advised the court that the evaluation found the defendant competent to stand trial and requested a continuance to obtain another expert evaluation. *Id.* Defense counsel received a second report in November 2002 but did not forward it to the state or the court and did nothing in the case until October 2003. *Id.*

We do not view this case as similar to *McNeely* and *Stock* because the facts in both cases are far more egregious than in this case. Here, although there is a ten-month delay, there is no indication that the court had ordered any hearing as in *McNeely*, or that any party had any information pertaining to the evaluation as in *Stock*. Moreover, even if we were to attribute some of the delay to defense counsel, and not to Defendant, that time constitutes delay attributable to Defendant.

With regard to Defendant's assertion of his right to a speedy trial, Defendant's attorneys asserted his right when each filed an entry of appearance. We grant little weight to this type of pro forma action. *State v. Marquez*, 2001-NMCA-062, ¶ 21, 130 N.M. 651, 29 P.3d 1052.

There are three interests to consider when analyzing the prejudice factor: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern to the defendant, and (3) limiting the possibility that the defense will be impaired. *State v. Garza*, 2009-NMSC-038, ¶ 35, 146 N.M. 499, 212 P.3d 387. Defendant maintains that he suffered oppressive pretrial incarceration and a significant amount of anxiety. He makes no argument that his defense was impaired. The burden is on Defendant to make a particularized showing of prejudice, and the record reveals that the degree of his incarceration and anxiety was no more than that which is inherent for every defendant who is jailed while awaiting trial. *Id.*

When we balance the *Barker* factors, we do not conclude that Defendant's right to a speedy trial was violated. Even though there was a twenty-two-month delay, much of it was requested by Defendant. He did not assert his right to a speedy trial in anything other than a pro forma fashion, and he was not prejudiced by the delay.

**CONCLUSION**

We affirm Defendant's conviction.

_____
**JAMES J. WECHSLER, Judge**

13

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CELIA FOY CASTILLO, Judge**

14