**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| MARK ALAN LANE,<br>*Petitioner-Appellant*,<br><br>v.<br><br>CYNTHIA SWAIN,<br>*Respondent-Appellee.* | Nos. 17-55578<br>17-55579<br>17-55582<br><br>D.C. Nos.<br>2:14-cv-01324-GW-PLA<br>2:13-cv-08448-GW-PLA<br>2:14-cv-04876-GW-PLA<br><br><br>OPINION |

Appeals from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted November 6, 2018
Portland, Oregon

Filed December 20, 2018

Before: Ferdinand F. Fernandez and Sandra S. Ikuta,
Circuit Judges, and William K. Sessions III,[*]
District Judge.

Opinion by Judge Sessions

---

[*] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of three 28 U.S.C. § 2241 habeas corpus petitions in which Mark Alan Lane challenged the revocation of good time credits.

Lane was accused by the Bureau of Prisons of sending threatening letters from prison and was disciplined under BOP Prohibited Acts Code 203, which prohibits "[t]hreatening another with bodily harm or any other offense." He contended that the term "another" and the phrase "any other offense" are so broad and vague as to violate his rights under the First Amendment. The panel held that when read reasonably in the context of the prison setting, and limiting the phrase "any other offense" to criminal offenses or violations of BOP rules, Code 203 is sufficiently narrow and clear to protect inmates' First Amendment rights.

### COUNSEL

Alyssa D. Bell (argued) and Ashfaq G. Chowdhury, Deputy Federal Public Defenders; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Sarah Marie Schuh Quist (argued), Assistant United States Attorney; David M. Harris, Chief, Civil Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Respondent-Appellee.

## OPINION

SESSIONS, District Judge:

Federal inmate Mark Alan Lane appeals the denial of three habeas corpus petitions, each filed pursuant to 28 U.S.C. § 2241, in which he challenged the revocation his good conduct time credits. Lane was accused by the Bureau of Prisons ("BOP") of sending threatening letters from prison and was disciplined under BOP Prohibited Acts Code 203. Code 203 prohibits "[t]hreatening another with bodily harm or any other offense." 28 C.F.R. § 541.3, Table 1. On appeal, Lane contends that the term "another" and the phrase "any other offense" are so broad and vague as to violate his rights under the First Amendment. We hold that when read reasonably in the context of the prison setting, and limiting the phrase "any other offense" to criminal offenses or violations of BOP rules, Code 203 is sufficiently narrow and clear to protect inmates' First Amendment rights. We therefore affirm.

## I.

On February 27, 2002, Lane was sentenced in the United States District Court for the Southern District of Indiana to 360 months in prison for drug and money-laundering offenses. The BOP lists his release date as January 23, 2028. This Opinion addresses three § 2241 petitions filed by Lane

in the United States District Court for the Central District of California. Although the cases have different underlying facts, the appeals raise the same legal issues.

**A.  *Lane v. Swain*, Case No. 17-55579**

On March 18, 2012, Lane mailed a letter to the Assistant Director in Charge of the Federal Bureau of Investigation to request an investigation of a federal judge and a federal prosecutor. The letter stated, "I want to make sure you, and the proper authorit[ies] have what they need, in the event, I'm forced to kill a prison guard." A BOP Discipline Hearing Officer ("DHO") subsequently conducted a hearing and concluded that Lane had violated Code 203. Based on that finding, the DHO sanctioned Lane with lost good time credits, disciplinary segregation, and the loss of telephone, commissary, email, and visiting privileges.

**B.  *Lane v. Swain*, Case No. 17-55578**

On or about June 26, 2013, Lane mailed a letter to the United States Attorney's Office in Portland, Oregon, in which he wrote: "The Bureau of Prisons may have plans to exercise authority, it does[ ]not have, and that could cause people to get hurt, or even worse, killed." In the last line of the letter, he wrote, "Please take action before the Warden, gets cut down to size." Following an investigation, a DHO conducted a hearing and concluded that Lane had violated Code 203. Based on that finding, the DHO sanctioned Lane with the loss of good conduct time credits and disciplinary segregation.

**C. *Lane v. Swain*, Case No. 17-55582**

In July 2013, Lane mailed a second letter to the U.S. Attorney's Office in Portland, Oregon, in which he wrote: "The letter that I sent June 25, 2013, did you forward to local law enforcement? No matter what, my family has your name, address, and phone number." The U.S. Attorney's office read the letter as posing a threat, and sent it to Lane's prison for administrative action. A DHO conducted a hearing, concluded that Lane had violated Code 203, and sanctioned him with lost good conduct time credits and a $50 monetary fine.

**D. Lane's Section 2241 Petitions**

In response to each of these three disciplinary actions, Lane filed 28 U.S.C. § 2241 petitions in federal court. The district court denied the petitions, finding that they were supported by sufficient evidence. Lane appealed, and this court vacated the district court's judgment in light of *Lane v. Feather*, 610 F. App'x 628 (9th Cir. 2015). *Feather* was a consolidated appeal of three § 2241 petitions filed by Lane in the United States District Court for the District of Oregon. The panel in *Feather* remanded Lane's petitions for a determination of whether Code 203 is constitutional under *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). In the instant cases, the Magistrate Judge concluded on remand that Code 203 satisfies *Procunier*, and therefore recommended that Lane's petitions be dismissed. The district court adopted those recommendations, and these appeals followed.

## II.

A district court's denial of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 is reviewed de novo. *McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003). Purely legal questions, such as whether Code 203 violates the First Amendment under *Procunier*, are also reviewed de novo. *Royse v. Superior Court of Wash.*, 779 F.2d 573, 575 (9th Cir. 1986).

In *Procunier*, the Supreme Court struck down California prison regulations allowing censorship of letters that "unduly complain," "magnify grievances," or "expres[s] inflammatory political, racial, religious or other views or beliefs" in correspondence between inmates and non-inmates. 416 U.S. at 399; *see also id.* at 415. The Court held that interference with outgoing prisoner mail is only justified if the regulation furthers "an important or substantial governmental interest unrelated to the suppression of expression." *Id.* at 413. The Court further held that "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.*

With respect to the first requirement, the Supreme Court identified three relevant governmental interests: "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners." *Id.* at 412 (footnote omitted). "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial

governmental interests of security, order, and rehabilitation." *Id.* at 413.

The second prong requires the limitation to be "no greater than is necessary" to protect such interests. *Id.* The Supreme Court has made clear, however, that *Procunier* should not be read "as subjecting the decisions of prison officials to a strict 'least restrictive means' test." *Abbott*, 490 U.S. at 411. *Procunier* "require[s] no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest," and that the regulation provide "a close fit between the challenged regulation and the interest it purported to serve." *Id.* (quoting *Procunier*, 416 U.S. at 414).

With regard to legitimate governmental interests, Lane highlights the Supreme Court's observation in *Abbott* that "outgoing personal correspondence from prisoners—did not, by its very nature, pose a serious threat to prison order and security," 490 U.S. at 411, and this Court's comment that there is a "low security risk posed by written material not addressed to prison officials." *Bradley v. Hall*, 64 F.3d 1276, 1281 n.2 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001)). In *Abbott*, however, the Supreme Court specifically preserved the holding in *Procunier* as it applies to outgoing prisoner mail. 490 U.S. at 413 (limiting *Procunier* "to regulations concerning outgoing correspondence"). Here, the district court concluded that Code 203 addresses both prison security and prisoner rehabilitation, and Lane does not contest those specific findings.

Lane instead focuses his attack on the second prong of the *Procunier* test: that the regulation be no greater than necessary to protect those legitimate governmental interests.

Lane questions the broad scope of the regulation, arguing first that it prohibits all threatening statements regardless of their context. This argument ignores the setting in which Code 203 is applied: a federal prison. Seen in that light, the regulation prohibits communications in a context where threats by inmates may give rise to reasonable concerns about institutional security and individual rehabilitation.

More specifically, Lane submits that Code 203 is overly broad because it does not narrowly define the prohibited targets of threats beyond the term "another." He suggests that an inmate could therefore be disciplined under Code 203 for threatening, for example, fictional or historical characters such as Superman or Joseph Stalin. To discipline an inmate for threatening those types of characters would defy common sense. There is no indication in the record that the BOP has ever taken such a broad view of Code 203, and we are reluctant to invalidate a rule based upon such hypotheticals. The term "another" as set forth in Code 203 is commonly understood to be another living person, and is not impermissibly broad.[1]

Lane's next attack on Code 203 submits that the phrase "any other offense" is without limitation. His examples of potentially punishable offenses include threats of frivolous

---

[1] We note that the term "another" is widely used in statutes that prohibit threatening conduct. *See, e.g.*, 18 Pa. Cons. Stat. § 3701(a)(1)(ii) (2014) (Pennsylvania robbery statute imposing punishment when accused "threatens another with or intentionally puts him in fear of immediate serious bodily injury"); N.M. Stat. Ann. § 30-3-2 (1978) (New Mexico aggravated assault statute prohibiting "assault by threatening or menacing another"); Tex. Penal Code Ann. § 22.01(a)(2) (2017) (Texas assault statute prohibiting conduct that "intentionally or knowingly threatens another with imminent bodily injury").

lawsuits, copyright infringement, or defamatory language. Again applying common sense, threatening an "offense" cannot mean posing a threat of civil suit. Rather, the regulation is reasonably construed as threatening either a criminal violation or an offense punishable under BOP regulations.

*Procunier* supports that construction. Footnote 15 of the Supreme Court's decision commented on a set of revised regulations, drafted while that case was on appeal, that "are indicative of one solution to the [First Amendment] problem" posed in that case. *Procunier*, 416 U.S. at 416 n.15. The revised regulations included a provision allowing disapproval of outgoing inmate mail containing "threats of physical harm against any person or threats of criminal activity." *Id.* The cited provision nearly mirrors the language in Code 203, with "criminal activity" being the parallel to "any other offense." Although the legitimacy of that specific provision was not before the Supreme Court, its commentary provides useful guidance for this case.

In *Procunier*, the Supreme Court acknowledged that "[t]raditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration" because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." 416 U.S. at 404–05. Accordingly, courts afford "deference to the appropriate prison authorities," but will nonetheless "discharge their duty to protect constitutional rights" when a prison regulation "offends a fundamental constitutional guarantee." *Id*. at 405–06. The regulation in *Procunier* was impermissible because it infringed on inmates' First Amendment rights to air complaints and grievances. The

language of Code 203 is clearly distinguishable, curbing threats of harm and other offenses.

As Lane's own cases illustrate, legitimate governmental interests are at stake, since allowing inmates to threaten a warden, prison guard, or any other person with bodily harm or other criminal conduct is clearly unacceptable. In light of the regulation's limited language, read reasonably in the context of federal prisons, we find that Code 203 is a sufficiently "close fit" with those legitimate interests to pass the *Procunier* test.

**AFFIRMED.**