**FILED**

07/25/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0624

DA 21-0624

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 142

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

KENNETH WAYNE DALY,

  Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
       In and For the County of Mineral, Cause No. DC-17-20
       Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

    James M. Siegman, Attorney at Law, Jackson, Mississippi

  For Appellee:

    Austin Knudsen, Montana Attorney General, Mardell Ployhar,
    Assistant Attorney General, Helena, Montana

    Debra A. Jackson, Mineral County Attorney, Superior, Montana

         Submitted on Briefs: June 7, 2023

           Decided: July 25, 2023

Filed:

        _____
            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Kenneth Wayne Daly appeals the Fourth Judicial District Court's denial of his motion to dismiss for lack of speedy trial. Daly argues that he was presumptively prejudiced by the over 1,300-day delay in bringing his case to trial. Though we agree with Daly that the State did not show a valid reason for the delay, review of the record demonstrates that Daly was not prejudiced. The District Court did not err in its balance of the speedy trial factors, and we accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On May 23, 2017, the State charged Daly with felony criminal distribution of dangerous drugs and felony criminal possession of dangerous drugs with intent to distribute. The District Court issued an arrest warrant the same day. The Office of State Public Defender was appointed to represent Daly; Kirk Krutilla entered his notice of appearance on May 24, 2017. The court set an arraignment hearing for June 7, 2017, but Daly did not appear. The court advised that the matter would be reset as soon as Daly was apprehended on the arrest warrant.

¶3 Unaware that he had assigned counsel, Daly filed a pro se motion on December 8, 2017, to quash the arrest warrant and to proceed with disposition of his charges, explaining that he could not make court appearances in Montana due to his incarceration with the Idaho Department of Corrections as of September 1, 2017, and his prior incarceration in Kootenai County as of January 19, 2017. Daly's motion went unanswered, and nothing progressed in his case until the jails in Idaho mistakenly released him on April 30, 2020,

2

with the Montana arrest warrant still pending. Daly's probation officer contacted him, notifying him of the mistake and that he had to return to custody on the arrest warrant later that same day. Daly complied and was transported to Montana for the pending charges. On May 1, 2020, the Office of State Public Defender entered another notice of appearance, assigning Daly's case to Jacob Coolidge. Krutilla never withdrew as counsel.

¶4 The court released Daly on his own recognizance on May 20, 2020, ordering that he return to Idaho to contact his probation officer there. On June 30, 2020, Daly appeared for his omnibus hearing in this matter. On September 23, 2020, Daly requested that the matter be continued and set for a change of plea hearing. The court scheduled his change of plea hearing for November 2, 2020. The change of plea hearing was pushed to November 18, 2020, due to Daly's connectivity issues appearing via video, and continued again after Daly's request to brief a speedy trial issue. Daly explained that if he lost this challenge, then he would enter a guilty plea.

¶5 At a December 30, 2020 status hearing, the court inquired about the pending plea agreement. Coolidge reported that, though Daly had reached an agreement with the State, Coolidge later realized that Daly had a meritorious speedy trial claim based on the time that Daly spent incarcerated in Idaho with charges pending in Montana. Daly reiterated that he would plead guilty if he lost the speedy trial issue. The court set trial for February 11, 2021.

¶6 Following submission on the parties' briefs, the District Court denied Daly's motion to dismiss for lack of speedy trial. The court acknowledged the lengthy delay between the

3

State filing charges on May 23, 2017, and Daly's initial appearance on May 27, 2020. The court attributed most of this delay to Daly, however, for not asserting a speedy trial claim or otherwise responding to the charges while incarcerated in Idaho. On balance, it found that Daly suffered "little prejudice" because he was released on his own recognizance and provided an "inadequate showing" that he suffered impediments to his defense.

¶7 Daly pleaded guilty on February 10, 2021, to criminal distribution of dangerous drugs. The court imposed a ten-year sentence, with all time suspended, to run concurrent to his Idaho sentence. It granted Daly 1,382 days of credit for time served. The court dismissed Daly's charge for criminal possession of dangerous drugs with intent to distribute. Daly now appeals the District Court's denial of his motion to dismiss.

## STANDARD OF REVIEW

¶8 "A speedy trial violation presents a question of constitutional law, which this Court reviews *de novo* to determine whether the court correctly interpreted and applied the law." *State v. Chambers*, 2020 MT 271, ¶ 6, 402 Mont. 25, 474 P.3d 1268 (citations omitted). The "[f]actual findings underlying a speedy trial analysis are reviewed for clear error." *Chambers*, ¶ 6 (citations omitted).

## DISCUSSION

¶9 "A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution." *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815. "Courts use the four-factor *Ariegwe* balancing test to determine if a criminal

4

defendant's right to a speedy trial has been violated." *State v. Hesse*, 2022 MT 212, ¶ 9, 410 Mont. 373, 519 P.3d 462.  The balancing factors are the length of delay, the reasons for delay, the accused's responses to the delay, and prejudice to the accused.  *Ariegwe*, ¶ 113.

*Factor One: Length of Delay*

¶10    Courts must analyze speedy trial claims when the length between criminal accusation and trial exceeds 200 days.  *Hesse*, ¶ 10.  At the District Court level, Daly and the State agreed that the length of delay was "at least 1,382 days" between the charges brought on May 23, 2017, and the set trial date of February 11, 2021.  On appeal, the State correctly contends that the "proper calculation" between those dates is 1,361.  Regardless, the length of time exceeds 200 days, so the District Court's analysis properly continued.

¶11    "Courts next consider the extent to which the delay stretches beyond the 200-day trigger date."  *Hesse*, ¶ 11 (citing *Ariegwe*, ¶ 107).  The presumption that pretrial delay has prejudiced the accused intensifies as the delay lengthens.  *Hesse*, ¶ 11 (citing *Ariegwe*, ¶ 107).  "[T]he State's burden to justify the delay becomes heavier the longer the delay." *Hesse*, ¶ 11 (citing *Ariegwe*, ¶ 107).  The delay extended six times beyond the 200-day trigger period.  This weighs in Daly's favor, and the State has a heavier burden to justify the delay.

*Factor Two: Reasons for Delay*

¶12    Each period of delay is next attributed to the appropriate party. *Ariegwe*, ¶ 108. By default, we attribute to the State any delay not caused by the accused. *Ariegwe*, ¶ 108. Not every period weighs the same; courts "assign weight based on the reason for the delay." *Hesse*, ¶ 12 (citing *Ariegwe*, ¶ 108). "Institutional delays, such as overcrowded court dockets, weigh less heavily against the State than do deliberate or negligent delays." *Hesse*, ¶ 12 (citing *Ariegwe*, ¶ 108).

¶13    The District Court attributed the time prior to Daly's arrest in this matter to Daly due to his "failure to assert a speedy trial motion or otherwise respond to the charges while [Daly] was incarcerated in Idaho." The court next attributed to the State as institutional delay the twenty-seven days between Daly's arrest and first appearance in this matter, the thirty-five days between his first appearance and omnibus hearing, and the forty-four days between his omnibus hearing and the scheduling conference. The court attributed to Daly the delay between Daly's first requested continuance on September 23, 2020, and Daly's request for briefing on the speedy trial issue on November 18, 2020. The court further attributed to Daly the days from Daly's request for briefing to the trial set for February 11, 2021. We agree with the court's allocation regarding the delays after Daly's arrest on May 1, 2020. The District Court erred, however, when it attributed to Daly all the delay prior to his arrest.

¶14    "The duty to bring the defendant to trial is upon the State and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State

avoid dismissal for failure to timely prosecute him." *Chambers*, ¶ 10 (citing *Ariegwe*, ¶ 64; *State v. Blair*, 2004 MT 256, ¶ 23, 324 Mont. 444, 103 P.3d 538). This general rule has a caveat when an accused is serving a sentence in a different state with charges pending in Montana. *See State v. Grant*, 227 Mont. 181, 185-86, 738 P.2d 106, 109 (1987). This Court has found that "imprisonment in another state, based upon defendant's own conduct, should be attributed to him in a speedy trial analysis." *State v. Brekke*, 2017 MT 81, ¶ 15, 387 Mont. 218, 392 P.3d 570. We have also found, however, that the time chargeable to an accused held in another state ceases to run when the accused requests final disposition of the Montana charges. *Grant*, 227 Mont. at 186, 738 P.2d at 109. Whether this time counts against the accused depends on the applicability and procedures of the Interstate Agreement on Detainers.

¶15 The Interstate Agreement on Detainers, codified at § 46-31-101, MCA, governs speedy trial concerns when an accused is facing charges but is incarcerated in another state and the charging state files a detainer with the holding state. *Brekke*, ¶ 16. Once a detainer is filed, the holding state must inform the accused, and the accused then has the right to demand that the charging state bring him to trial within 180 days. Section 46-31-101, Article III (1), MCA. When a detainer is not filed, the matter is governed by "the common law of speedy trial under the United States and Montana Constitutions." *Brekke*, ¶ 17.

¶16 The State argues that the time that Daly spent in Idaho is attributable to him because it had no obligation under the Interstate Agreement on Detainers to bring Daly to trial. It maintains that it never filed a detainer with Idaho so it did not need to bring its case against

7

Daly within 180 days. Even if this Court were to determine that the Interstate Agreement on Detainers applies, the State contends that it should at least not be responsible for the delay where it, admittedly, did not know where Daly was.

¶17 The State is correct that it did not need to file a detainer in this case, but that does not mean that all the time that Daly spent incarcerated in Idaho is attributable to him under a speedy trial analysis. *See State v. Nickerson*, 2014 MT 83, ¶ 12, 374 Mont. 354, 322 P.3d 421 (citation omitted) (the inapplicability of the Interstate Agreement on Detainers does not "close the inquiry" on speedy trial claims). Even without a detainer, the accused still has a constitutional right to have the "prosecution completed by imposition of sentence within a reasonable time." *Nickerson*, ¶ 12 (citation omitted).

¶18 Daly was assigned counsel on May 24, 2017. Daly went unaware of this assignment and on December 8, 2017, filed a pro se motion with the District Court requesting that the court quash his arrest warrant, assign him counsel, and proceed with disposition of his case in Montana. In this motion, Daly explained that he had been incarcerated in Idaho since January 19, 2017, and it was for this reason that he missed his initial appearance. The State did not respond to this motion, and the court did not rule on it. Daly's case was seemingly abandoned for approximately the next two and a half years. The next document entered into the case register is Coolidge's notice of appearance on May 1, 2020.

¶19 The State asks this Court to attribute an over 1,000-day delay entirely to an accused who was incarcerated in another state. Even if the State did not know where he was at first, Daly informed everyone where he was and that he wished to proceed with disposition of

his Montana charges on December 8, 2017. The State then took an additional 902 days to bring Daly to his initial appearance on these charges.

¶20 We have not held, and decline to rule now, that where the Interstate Agreement on Detainers is inapplicable the State enjoys an unlimited amount of time to prosecute its case against an accused held in a different jurisdiction. The State is obligated to prosecute to the imposition of a sentence "within a reasonable time." *Nickerson*, ¶ 12 (citation omitted). To wait 902 days after Daly notified the State of his location and expressed his wish to proceed to disposition was unreasonable. This time weighs against the State as negligent delay. The court erred by automatically attributing this time to Daly without further consideration. *See Nickerson*, ¶ 12. We conclude that this second factor weighs against the State.

*Factor Three: Accused's Responses to Delay*

¶21 "Courts next evaluate the accused's responses to the delay to determine whether the accused 'actually wanted a speedy trial, which in turn informs the inquiry into whether there has been a deprivation of the right.'" *Hesse*, ¶ 14 (citing *Ariegwe*, ¶ 110). Courts do not address this factor by counting the number of times that an accused objected to a delay or raised a speedy trial claim. *State v. Zimmerman*, 2014 MT 173, ¶ 22, 375 Mont. 374, 328 P.3d 1132. Rather, under this factor, courts consider "whether the accused asserted the speedy trial right; the timeliness, persistence, and sincerity of the accused's objections to delay; the reasons for any acquiescence in delay; whether the accused was represented by counsel; and the accused's pretrial conduct (as that conduct bears on the speedy trial

right)." *Zimmerman*, ¶ 22 (citations omitted). "[T]he primary purpose of Factor Three is to assess 'whether the accused actually wanted to be brought to trial promptly.'" *Zimmerman*, ¶ 23 (citing *Ariegwe*, ¶ 76).

¶22 The District Court concluded that Daly did "not indicate[] a desire to waive a speedy trial right." The State argues that the "totality" of Daly's responses indicates that he did not want a speedy trial. It points out that he did not raise a specific speedy trial concern until November 18, 2020, and that he did not take additional steps to ensure that the matter would proceed to disposition.

¶23 "A court 'may not infer that the accused did not want a speedy trial *solely* because he or she did not object to pretrial delay often or at all.'" *Zimmerman*, ¶ 24 (citing *Ariegwe*, ¶ 82 (emphasis in original)). "Such an inference would conflict with two core principles: first, the accused is under no obligation to ensure diligent prosecution of the case against him, and has no duty to bring himself to trial; and second, courts should not presume acquiescence in the loss of fundamental rights[.]" *Zimmerman*, ¶ 24 (internal citations omitted). Daly requested that his case proceed to disposition on December 8, 2017. He did not need to repeatedly remind the court or the State that this was his wish to avoid waiving his speedy trial claim. *See Zimmerman*, ¶ 24.

¶24 Additionally, Daly's continuances later in his case do not indicate a waiver of his right to a speedy trial. Daly caused a 142-day delay as a result of his continuances. He requested these continuances so that he could bring his speedy trial claim. Daly evidenced his desire for a speedy trial; this factor weighs against the State.

10

*Factor Four: Prejudice to the Accused*

¶25 Finally, courts assess whether an accused was prejudiced by the delay by considering three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern caused by the presence of unresolved criminal charges; and (3) limiting the possibility that the accused's ability to present an effective defense will be impaired. *Hesse*, ¶ 15 (citing *Ariegwe*, ¶ 111).

*a. Oppressive Pretrial Incarceration*

¶26 We assess the oppressiveness of pretrial incarceration considering all the circumstances of the accused's situation. *Ariegwe*, ¶ 111. The State argues that this factor does not weigh in Daly's favor because he was incarcerated on another offense prior to his arrest and subsequent incarceration on these charges. The State points out that Daly was incarcerated on the Montana charges for only three weeks before he "was released on his own recognizance on May 20, 2020[,] and was never rearrested."

¶27 "[T]he longer the pretrial incarceration, the more likely it has been oppressive and the more likely the accused has been prejudiced by the delay." *Ariegwe*, ¶ 90. That the accused was incarcerated on a separate charge while awaiting trial on the instant charge informs the issue of oppressiveness but is not dispositive. *Ariegwe*, ¶ 92 (citing *State v. Highpine*, 2000 MT 368, ¶ 26, 303 Mont. 422, 15 P.3d 938; *Smith v. Hooey*, 393 U.S. 374, 378, 89 S. Ct. 575, 577 (1969)). Daly argues that the time he spent incarcerated on another charge while the present charges were pending lent to the oppressive nature of his pretrial incarceration. Daly further maintains that he should not have served any time for this

11

offense, regardless of whether it was later calculated as credit for time served, because the State took too long to prosecute his case. Daly equates credit for time served as a "price" on his constitutional right to a speedy trial.

¶28 In *State v. LaGree*, we held that an accused was not "extraordinar[ily] prejudiced" by incarceration on a separate offense because the accused did not demonstrate that he would not otherwise be incarcerated. 2007 MT 65, ¶¶ 24-26, 336 Mont. 375, 154 P.3d 615. Daly was returned to custody the same day of his release in Idaho because he was "accidentally released" rather than "detained on [Montana's] warrant." He was then transported to Montana and incarcerated on these charges for three weeks before he was released on his own recognizance. The court released Daly with instructions to return to Idaho and make contact with his probation officer within twenty-four hours. The record indicates that Daly returned to the supervision of his probation officer in Idaho— supervision that he would be under regardless of the Montana charges. Daly has not demonstrated that the Montana charges had any bearing on his Idaho incarceration or that but for delays in this case he would not have been incarcerated. *See LaGree*, ¶¶ 25-26.

¶29 When determining the oppressive nature of pretrial incarceration, courts also should consider "the condition of the facilities and how they impact the accused, rather than solely . . . the condition of the accused." *Hesse*, ¶ 16 (citation omitted). "[T]he accused generally has better access than does the State to evidence showing whether he . . . has suffered oppressive pretrial incarceration[.]" *Ariegwe*, ¶ 53. Daly does not protest the

conditions of his incarceration, only that any incarceration—even three weeks—was prejudicial. We conclude that Daly's pretrial incarceration was not oppressive.

### b. Anxiety and Concern

¶30 "We recognize that a certain amount of anxiety and concern is inherent in being charged with an offense, and therefore focus on that which is aggravated as a result of the delay." *Highpine*, ¶ 28 (citing *State v. Williams-Rusch*, 279 Mont. 437, 452, 928 P.2d 169, 178 (1996). Anxiety and concern are "subjective" and "difficult to demonstrate." *Ariegwe*, ¶ 95. Because it is "nearly impossible" for the State to prove an accused's levels of anxiety and concern, the burden on the State to show a lack of anxiety "becomes considerably lighter in the absence of more than marginal evidence of anxiety." *Ariegwe*, ¶ 53 (quoting *State v. Haser*, 2001 MT 6, ¶ 32, 304 Mont. 63, 20 P.3d 100).

¶31 To support his contention that he experienced undue anxiety and concern, Daly relies on the concept that prejudice is presumed the longer the delay. *See Hesse*, ¶ 11. He argues that the District Court erred by expecting more evidence from Daly that prejudice occurred rather than more evidence from the State to the contrary when it concluded that he experienced "little prejudice." When addressing this factor, we consider indicators such as the loss of employment, financial suffering, any curtailment of associations, and damaged reputation. *Ariegwe*, ¶ 96 (citation omitted).

¶32 In his motion to dismiss, Daly asserted that there was "no doubt" his anxieties increased due to the delay. Yet, Daly did not request an evidentiary hearing on his speedy trial motion and provided no evidence that he suffered "aggravated" anxiety and concern

due to the lengthy delay. On appeal, Daly offers no anxiety or concern beyond the "abrupt return" to custody that he experienced as a result of the arrest warrant and that he had the knowledge of pending charges while incarcerated on another offense. "A certain amount of anxiety and concern is inherent in being accused of a crime"; the speedy trial guarantee is designed to shorten the disruption of the accused's life, not to eliminate it altogether. *Ariegwe*, ¶ 97. Daly provided no evidence that he experienced aggravated anxiety while incarcerated in Idaho due to the knowledge that he had pending charges in Montana. Daly's "abrupt return" to custody for three weeks when he was released in Idaho is not the kind of anxiety or concern that rises to the level beyond that "inherent in being accused of a crime." *See Hesse*, ¶ 19 (citing *Ariegwe*, ¶ 111).

### c. Impaired Defense

¶33    Courts are required to consider whether the delay weakened the accused's ability to "raise specific defenses, elicit specific testimony, or produce specific items of evidence[.]" *Ariegwe*, ¶ 111. This is the most important consideration in our prejudice analysis. *Hesse*, ¶ 21. Daly does not address this factor on appeal, arguing that because prejudice is presumed for lengthy delays he does not need to show a particularized impairment. The State maintains that Daly never requested an evidentiary hearing to show impairment or provided a reason as to how his defense was impaired by the delay. It further contends that Daly's intention to enter a guilty plea if the court rejected his speedy trial claim demonstrates that his defense was not impaired.

14

¶34 Though a lengthy delay requires less from the accused to demonstrate prejudice, "it would be virtually impossible for the State to rebut presumed prejudice from an allegedly impaired defense without some showing by the defendant of actual impairment resulting in prejudice." *State v. Keating*, 285 Mont. 463, 476, 949 P.2d 251, 259 (1997). Daly offers no rebuttal to the State's argument that his defense was not impaired, simply repeating that his burden to demonstrate "particularized prejudice" has decreased. We agree with the District Court that Daly was not prejudiced by an impaired defense.

*Balancing the Factors*

¶35 "When balancing the four factors, the court must consider them together and 'with such other circumstances as may be relevant.'" *Hesse*, ¶ 24 (citing *Ariegwe*, ¶ 112). "[I]t is doubtful that the mere passage of time could 'conclusively' establish that the accused has been denied his or her right to a speedy trial." *Ariegwe*, ¶ 60. Daly is correct that, as the pretrial delay increases, "the necessary showing by the accused of particularized prejudice decreased, and the necessary showing by the State of no prejudice correspondingly increased, with the length of delay." *Ariegwe*, ¶ 58. But review of the record demonstrates that Daly did not experience prejudice beyond the "mere passage of time."

¶36 "[A]lthough there may be cases where the absence of prejudice will not defeat a speedy trial claim, those case will be few and far between[.]" *State v. Steigelman*, 2013 MT 153, ¶ 37, 370 Mont. 352, 302 P.3d 396. The State should not have left Daly in Idaho for the length of time that it did if it intended to prosecute him on these charges.

Daly, however, did not experience oppressive incarceration, excessive anxiety or concern, or any apparent impairment to his defense, and he received credit against his sentence for all the time he served in Idaho after the charges were filed. Because Daly was not prejudiced by the delay, the District Court did not err in concluding that he was not denied his right to a speedy trial.

## CONCLUSION

¶37 The District Court correctly denied Daly's motion to dismiss for lack of speedy trial. His conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE