FILED

03/17/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0618

DA 23-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 55

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

ANDREW DAVID LARSON,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 22-61
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Scotti L. Ramberg, Peace Law Group, LLC, Missoula, Montana

      For Appellee:

         Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

         William E. Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  December 17, 2025

Decided:  March 17, 2026

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Andrew Larson appeals from the Twenty-First Judicial District Court's denial of his motion to dismiss for lack of speedy trial. Larson entered a no-contest plea to the charges filed against him but reserved the right to appeal the District Court's denial of his motion to dismiss. We consider:

> *Did the District Court err by denying Larson's motion to dismiss for lack of speedy trial?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 18, 2022, Larson stole a GMC pickup from Quality Motors in Hamilton, Montana. Trooper Heaney of Montana Highway Patrol, responding to the report of a stolen vehicle, saw Larson driving the GMC pickup on the highway. A high-speed chase ensued with Larson reaching speeds of 100 mph. Larson sped through active construction zones with workers present before coming to a stop in a parking lot, where he was noncompliant with instructions to exit the vehicle. A blood sample revealed Larson's blood alcohol content was .259.

¶3 On March 30, 2022, the State filed an Information charging Larson with six counts, including Driving Under the Influence, Fourth or Subsequent, a felony, in violation of §§ 61-8-1002 and 61-8-1008, MCA; two counts of Criminal Endangerment, felonies, in violation of § 45-5-207, MCA; Theft, a felony, in violation in § 45-6-301, MCA; and several other misdemeanors. The day prior to this incident Larson had been released on his own recognizance in other cases, including theft and assault with a weapon, on

2

conditions that he not consume alcohol or commit other crimes.  Consequently, the District Court set a bond for the present case at $200,000 and Larson was unable to post bond.

¶4       On April 7, 2022, Larson made his initial appearance in the District Court, where it set a review hearing for July 7, 2022.  The review hearing was rescheduled for July 21, 2022, at which time Larson's defense counsel requested two additional weeks to discuss with Larson the present case and several other pending cases against him, and the District Court continued the review hearing to August 4, 2022.  At that time, the parties concurred in proceeding to trial.[1]  On August 23, 2022, the District Court issued a trial preparation order which, among other things, set trial in the present case for October 31, 2022, on which date Larson had other pending cases also scheduled for trial.  On October 31, 2022, one of Larson's older cases, *State v. Larson*, No. DC-22-10 (Mont. Twenty-First Judicial Dist. filed Jan. 20, 2022) (hereinafter DC-22-10), proceeded to trial instead of the trial in the present case.  The District Court rescheduled the present case, along with another of Larson's pending cases, *State v. Larson*, No. DC-22-14 (Mont. Twenty-First Judicial Dist. filed Jan. 20, 2022) (hereinafter DC-22-14), for jury trial on January 9, 2023.

¶5       On November 2, 2022, the District Court filed an amended conditions of release in the present case, which recognized that, as of November 2, 2022, Larson had become an inmate at the Department of Corrections (DOC) for yet a different matter, *State v. Larson*, No. DC-20-26 (Mont. Twenty-First Judicial Dist. filed March, 3, 2020) (hereinafter

---

[1] In its order denying Larson's motion to dismiss for lack of speedy trial, the District Court noted that, "from this date forward [August 4, 2022], Defendant was aware and consented to, his multiple cases all being set for the same date for trial, knowing that only one of the cases could possibly go to trial at that first setting."

DC-20-26).  The District Court changed Larson's detention status for the present case to release on his own recognizance.

¶6     On December 22, 2022, Larson moved to vacate the January 9, 2023 trial settings for both the present case and DC-22-14 and set a change of plea hearing.  The District Court granted the motion and set a change of plea hearing for both cases for January 12, 2023.  On January 12, 2023, Larson moved for a one-week continuance of the hearing, and the District Court agreed to conduct a change of plea hearing on January 19, 2023, if a signed plea agreement was submitted prior to that day.  By January 19, 2023, no plea agreement had been signed or submitted, and the District Court advised it would reset both cases for trial.  Thus, the next day the District Court issued a trial preparation order and set the present case and DC-22-14 for trial on May 1, 2023.  On April 28, 2023, the District Court ordered that, "having determined that *State v. Martinez* takes priority over *State v. Larson*," the trial date for the present case be reset from May 1, 2023, to July 10, 2023.

¶7     On July 6, 2023, Larson filed a motion to dismiss for lack of speedy trial.  On July 7, 2023, Larson entered a no-contest plea to an Amended Information that charged him in the present case with Driving Under the Influence, Fourth or Subsequent, a felony, in violation of §§ 61-8-1002 and 61-8-1008, MCA; one count of Criminal Endangerment, a felony, in violation of § 45-5-207, MCA; and Theft, a felony, in violation § of 45-6-301, MCA; and reserved the right to appeal his motion to dismiss for lack of speedy trial.  On August 2, 2023, the District Court denied the motion and sentenced Larson.

¶8     Larson appeals the District Court's denial of his speedy trial motion.  Additional facts are set forth below.

**STANDARD OF REVIEW**

¶9 A speedy trial violation presents a question of constitutional law, which this Court reviews de novo to determine whether the court correctly interpreted and applied the law. *State v. Zimmerman*, 2014 MT 173, ¶ 11, 375 Mont. 374, 328 P.3d 1132 (citing *State v. Ariegwe,* 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). Factual findings underlying a speedy trial analysis are reviewed for clear error. *State v. Burnett*, 2022 MT 10, ¶ 14, 407 Mont. 189, 502 P.3d 703 (citing *Zimmerman*, ¶ 11).

**DISCUSSION**

¶10 *Did the District Court err by denying Larson's motion to dismiss for lack of speedy trial?*

¶11 "A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution." *Ariegwe,* ¶ 20. "The right to a speedy trial remains relative and depends on the circumstances of the case." *Burnett*, ¶ 17 (citing *Zimmerman*, ¶ 12). "Courts use the four-factor *Ariegwe* balancing test to determine if a criminal defendant's right to a speedy trial has been violated." *State v. Hesse*, 2022 MT 212, ¶ 9, 410 Mont. 373, 519 P.3d 462. The balancing factors are the length of delay, the reasons for delay, the accused's responses to the delay, and prejudice to the accused. *Ariegwe*, ¶ 34.

**Factor One: the length of the delay**

¶12 A defendant's right to a speedy trial starts "once a defendant becomes an accused through an arrest, the filing of a complaint, or by indictment by information." *State v. Stops*, 2013 MT 131, ¶ 25, 370 Mont. 226, 301 P.3d 811 (citing *Ariegwe*, ¶ 42). The

5

threshold inquiry to trigger a speedy trial analysis is whether the interval between accusation and disposition of the case is at least 200 days. *Burnett*, ¶ 18 (citations omitted); *Ariegwe*, ¶ 43 (The "interval between accusation and trial runs not to the date on which the accused's speedy trial motion is considered by the court but, rather, to the scheduled trial date or the date on which a plea of guilty is entered, whichever date represents the date of disposition of the case."). Larson was arrested on March 18, 2022, and entered a no-contest plea on July 7, 2023, an interval of 476 days.

¶13 Our analysis also considers the extent to which the delay, without regard to fault, stretches beyond the 200-day trigger date. *Ariegwe*, ¶ 107. As pretrial delay lengthens, the presumption of prejudice to the accused grows stronger, and the State's obligation to justify the delay becomes increasingly heavier. *Hesse*, ¶ 11. When the delay is long, such as "twice the amount of delay that is considered sufficiently prejudicial to trigger the speedy trial test," the State bears a heavier burden under the second factor to justify the delay. *Ariegwe*, ¶ 123. And, under the fourth factor, the State must then make a highly persuasive showing that the defendant suffered no prejudice, while the defendant is held to a correspondingly lower "quantum" of proof to demonstrate prejudice. *Ariegwe*, ¶ 123; *State v. Allery*, 2023 MT 25, ¶ 19, 411 Mont. 219, 523 P.3d 1088. The delay here extended 276 days beyond the 200-day trigger period, increasing the State's burden to explain the delay under the second factor. Additionally, under the fourth factor, the 276-day delay increases the State's burden of demonstrating that Larson was prejudiced while decreasing the quantum of proof expected of Larson to establish prejudice.

6

**Factor Two: the reasons for the delay**

¶14     Under the second factor, the "court first identifies each period of delay in bringing the accused to trial.  Because the question is one of 'delay,' the court does not consider any actions taken by the State or the accused which do not result in a postponement of the trial date."  *Ariegwe*, ¶ 63.  We assign each delay period to the party responsible.  *Burnett*, ¶ 21.  The State is responsible for ensuring a defendant is brought to trial in a timely manner, so any delay is attributed to the State unless the defendant either caused that delay or expressly waived the speedy trial right for the specific period involved.  *Stops*, ¶ 27; *see also State v. Daly*, 2023 MT 142, ¶ 12, 413 Mont. 100, 533 P.3d 326 ("By default, we attribute to the State any delay not caused by the accused.").  Institutional delays, such as overcrowded court dockets, weigh less heavily against the State than do deliberate or negligent delays.  *Hesse*, ¶ 12 (citing *Ariegwe*, ¶ 108).  "In attributing each period of delay, however, the court must bear in mind that delay requested by a particular party may be attributable to the other party."  *Ariegwe*, ¶ 66.  Once the court identifies and attributes each period of delay to a specific party, it assigns weight to that period based on the cause and motive behind it, with the weight reflecting the degree of the responsible party's culpability.  *Ariegwe*, ¶ 67.

¶15     Due to the large number of continuance motions and the fact that no trial date was set until August 23, 2022, several months after arrest, creating headings for each discrete period of delay would be cumbersome.  While we do examine the specific cause and attribution for each period of delay, *see Ariegwe*, ¶ 67, nonetheless, for organizational clarity and efficiency, below we have grouped the time into the following groupings that

7

correspond to the key scheduling events in the record: (1) March 18, 2022, to October 31, 2022 (arrest to first scheduled trial date); (2) October 31, 2022, to January 12, 2023 (resetting the first scheduled trial date to the second scheduled trial date and its subsequent change of plea); and (3) January 12, 2023, to July 7, 2023 (post-failed change of plea to the no-contest plea).

*March 18, 2022, to October 31, 2022*

¶16 Our review of the record reveals a first period of delay between July 7, 2022 (Larson's originally scheduled first review hearing), and August 4, 2022 (when the first review hearing actually occurred). Complicating this period is the fact that no trial date was set until August 23, 2022, when the District Court issued its trial preparation order scheduling trial in the present case along with DC-22-10 and DC-22-14, all for October 31, 2022.[2] Neither party nor the District Court address the District Court's apparent *sua sponte* rescheduling of the initial review hearing from July 7, 2022, to July 21, 2022. Larson argues the District Court erred by attributing to him a 14-day delay when he moved to continue the July 21, 2022 review hearing to August 4, 2022, so he could review a global

_____

[2] The absence of a trial date being set at Larson's first appearance is noteworthy as the lack of a firm trial date from the outset can contribute to uncertainty in establishing a violation of a constitutional right. *See State v. Couture*, 2010 MT 201, ¶ 74, 357 Mont. 398, 240 P.3d 987 ("It is essential that a firm trial date be set at the defendant's arraignment."). And the record is silent as to why no trial date was set at the initial appearance. One plausible explanation lies in considerations of judicial efficiency. With Larson facing three other pending cases at the time, requiring the District Court to immediately reserve nearly a month of inflexible trial time (three separate four-day trials all scheduled on separate weeks) for a single defendant, without first allowing the State and defense counsel an opportunity to coordinate, would impose an unrealistic and potentially counterproductive burden on district courts. Such a rigid expectation could actually exacerbate speedy trial problems for other criminal defendants by monopolizing limited court resources in already crowded dockets.

plea offer resolving several of his cases, even though no trial date had yet been set. He further contends that although trial was ultimately scheduled for October 31, 2022, there is no evidence that the 14-day continuance between July 21, 2022, and August 4, 2022, delayed the District Court from setting a trial date.

¶17 We conclude that the District Court's *sua sponte* rescheduling of the July 7, 2022 review hearing to July 21, 2022, constitutes 14 days of institutional delay, as nothing in the record suggests Larson caused it, *see Burnett*, ¶ 21, and likely did, as discussed below, push back the scheduled date of Larson's trial. The District Court rescheduling may have been necessary, but under a speedy trial analysis, this period must be characterized as institutional. *State v. Good*, 2002 MT 59, ¶ 26, 309 Mont. 113, 43 P.3d 948 ("[The accused] cannot be held responsible for the court's policy regarding the setting of trial dates and its management of its criminal caseload."). However, Larson's subsequent 14-day continuance, from July 21, 2022, to August 4, 2022, to review a proposed global plea offer is properly attributable to him. Although no trial date had been set as of July 21, Larson rejected the plea offer on August 4, after which the District Court issued its trial preparation order. Had Larson been prepared to proceed on July 21 without the continuance, the review hearing would have occurred 14 days earlier, enabling the District Court to issue the trial preparation order 14 days sooner. While we cannot retroactively determine whether a trial date was actually available 14 days prior to October 31, 2022, the fact remains that Larson's requested continuance delayed the District Court's ability to set trial by 14 days. *See Burnett*, ¶ 22 (delays caused by the accused are classified and weighed using a similar approach as those attributable to the State); *State v. Kirn*, 2023 MT 98, ¶ 23, 412 Mont.

9

309, 530 P.3d 1 ("Where a defendant requests and acquiesces in a continuance, the delay caused by the continuance will likewise be attributed to the defendant."). The same logic applies to the District Court's rescheduling of the July 7, 2022 review hearing to July 21, 2022, and as previously determined, this 14-day period constitutes institutional delay attributable to the State. Accordingly, for the overall period from March 18, 2022, to October 31, 2022, 14 days of delay are attributable to Larson, with the rest being 213 days of institutional delay attributable to the State (125 days between March 18 and July 21, and 88 days between August 4 and October 31).

*October 31, 2022, to January 12, 2023*

¶18   Larson next argues the delay from October 31, 2022, to January 9, 2023 (when Larson's case in DC-22-10 proceeded to trial on October 31 and both the present case and DC-22-14 were rescheduled for January 9, 2023, with a November 17, 2022, pretrial conference) was institutional delay. We agree that this period constitutes institutional delay attributable to the State, but note its little weight given that the continuance stemmed directly from one of Larson's own cases proceeding with trial on October 31, 2022. *See Ariegwe*, ¶¶ 70-71 (institutional delays, such as those caused by court scheduling constraints or docket congestion, are attributed to the State but assigned minimal weight absent negligence or bad faith). The District Court observed that Larson never objected to rescheduling both of his cases for trial at the same time, those being DC-22-14 and the present case, even though he knew only one trial could proceed on January 9, 2023, and that he could have requested separate settings at any time to avoid one of his trials being bumped in favor of the other. Furthermore, at the November 17, 2022 pretrial conference,

10

both parties agreed that DC-22-14 had priority over the present case, but Larson indicated that DC-22-14 was likely to resolve by plea before trial, thereby elevating the present case to first priority for the January 9, 2023 trial date.

¶19 On December 22, 2022, Larson moved the District Court to vacate the January 9, 2023 trial setting for both the present case and DC-22-14, and to set a change of plea hearing. The District Court did so and scheduled a change of plea hearing for January 12, 2023. The District Court and the State both contend that any delay after December 22, 2022—including the days between December 22, 2022, and January 9, 2023—is attributable to Larson, but we disagree with this characterization.

¶20 The January 9, 2023 trial setting for the present case and for DC-22-14 was a result of Larson's case in DC-22-10 proceeding to trial on October 31, 2022. Larson's December 22, 2022, motion to vacate the January 9, 2023 trial did not cause the State or District Court to continue the trial beyond the date it had already been assigned. The motion merely requested that the existing trial date be vacated and instead a change of plea hearing be set, which the District Court granted by scheduling a change of plea hearing for only three days later, on January 12, 2023. Thus, the days between December 22, 2022, and January 9, 2023, would have remained as institutional delay regardless of Larson's motion, as the trial was already scheduled for January 9, 2023. *See Zimmerman*, ¶ 15 ("Because the question is one of 'delay,' we are not concerned with actions or events that did not result in a delay of the trial."). Only the three-day delay from January 9 to January 12, 2023, was directly caused by Larson's requested change of plea and is therefore properly attributable to him. *See Kirn*, ¶ 24 ("Delays caused by the defendant are

11

analyzed similarly to delays caused by the State.").  Accordingly, between October 31, 2022, and January 12, 2023, 70 days of institutional delay are attributable to the State, and 3 days are attributable to Larson.

*January 12, 2023, to July 7, 2023*

¶21    The District Court attributed all delay after January 12, 2023, to Larson.  On January 12, Larson moved for a one-week continuance of his change of plea hearing to January 19, 2023, so that he could further consider the plea offer.  Larson also requested that he be personally present for the change of plea on January 19, 2023.  The District Court, skeptical of Larson's intent to plead and concerned about wasting detention center resources, conditioned the January 19, 2023 change of plea proceeding on the filing of a signed plea agreement beforehand.  When no signed agreement was filed by January 19, 2023, the District Court warned Larson that further delay rested solely with him.  The District Court reset both the present case and DC-22-14 for trial on May 1, 2023.

¶22    On May 1, 2023, a case referenced as *"State v. Martinez,"* proceeded to trial based upon the District Court's assessment that it bore a higher priority given its speedy trial posture, explaining, "[N]o waiver of speedy trial had been filed nor had [Martinez] caused any continuances in the matter. [Martinez] was incarcerated and his case had priority setting as compared to [Larson's] cases, wherein [Larson] had caused numerous delays and continued his trial setting where he had priority, first setting."  The District Court then reset Larson's cases for July 10, 2023.  Larson entered no-contest pleas on July 7, 2023, and the District Court included the July 7-10 period as delay attributable to Larson in its speedy trial analysis.  Larson concedes that the delay from January 12 to May 1, 2023, is

12

attributable to him but contends that all time after May 1, 2023, constitutes institutional delay.

¶23 The District Court correctly attributed the period from January 12, 2023, to May 1, 2023, to Larson. Larson failed to enter a guilty plea on either January 12 or January 19, 2023, and the District Court reset the trials at the earliest available date following his failure to change his plea. *See Kirn*, ¶ 24 ("Where a defendant requests and acquiesces in a continuance, the delay caused by the continuance will likewise be attributed to the defendant.").

¶24 The delay after May 1, 2023, however, is properly characterized as institutional delay attributable to the State. The District Court is in control of its own docket and accordingly was permitted to prioritize the "*State v. Martinez*" trial on May 1, 2023. *See State v. Garcia*, 2003 MT 211, ¶ 32, 317 Mont. 73, 75 P.3d 313 (discussing a trial court's ability to control its own docket); *Ariegwe*, ¶ 68 ("[D]elay inherent in the criminal justice system and caused by circumstances largely beyond the control of the prosecutor and the accused [is] 'institutional delay,' and we attribute[] such delay to the State."). However, we disagree with the suggestion that Larson had "waived" his speedy trial rights merely because of prior delays that he caused.[3] *See State v. Couture*, 2010 MT 201, ¶ 78 n.5, 357 Mont. 398, 240 P.3d 987 ("[W]aivers are somewhat inapt in any event given our approach under Factor Two, which is to analyze the specific cause and motive for each period of delay. If the defendant caused a particular delay, it will be attributed to him

---

[3] Nothing in the records suggests that Larson filed any formal waiver of speedy trial, and neither party argues on appeal that Larson either waived or did not waive his speedy trial rights.

regardless of whether he signed a waiver for that period.") (Citations omitted.) While we acknowledge that the prioritizing of the *State v. Martinez* trial was not error, the resulting delay after May 1, 2023, remains institutional in nature.[4] Accordingly, from January 12, 2023, to July 7, 2023, the period from January 12 to May 1 (109 days) is attributable to Larson, while the period from May 1 to July 7 (67 days) constitutes institutional delay attributable to the State.

¶25    In summary, of the 476 days between arrest on March 18, 2022, and the no-contest plea on July 7, 2023, 350 days constitute institutional delay attributable to the State. The remaining 126 days of delay are attributable to Larson. This institutional delay includes the 70-day period from October 31, 2022, to January 9, 2023 (stemming from Larson's own higher-priority case proceeding on October 31) and the 67-day period from May 1 to July 7, 2023 (resulting from the failed plea attempt and the subsequent prioritization of another defendant's case on May 1, where that defendant had caused no significant delays). Thus, notably, while these periods, totaling 137 days (~40% of the 350 days of institutional delay), are properly classified as institutional delay attributable to the State, their underlying causes lie with Larson's own actions. While the State and the courts bear the constitutional obligation to bring a defendant to trial in a timely manner through good-faith,

---

[4] The District Court did err by attributing the 3-day period from July 7 to July 10, 2023, to Larson. For speedy trial purposes, the relevant end date is the date of disposition—typically the entry of a guilty plea or trial. *See Ariegwe*, ¶ 43 (delay is measured to the date of trial or other disposition); *see also Betterman v. Montana*, 578 U.S. 437, 439, 136 S. Ct. 1607, 1612 (2016) (The Sixth Amendment speedy trial guarantee "protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges."). Here, Larson entered a no-contest plea on July 7, 2023, disposing of the case on that date. The subsequent July 10 trial setting was therefore immaterial for speedy trial calculations.

diligent efforts and thus must ordinarily justify delays attributable to them, *see Ariegwe*, ¶ 65 (citing *McNeely v. Blanas*, 336 F.3d 822 (9th Cir.2003)), the circumstances here do not require the State or the District Court to provide justification and the delays weigh minimally against the State.

**Factor Three: the accused's responses to the delay**

¶26 Next, we evaluate whether the accused's responses to the delay show a desire to actually want a speedy trial, "which in turn informs the inquiry into whether there has been a deprivation of the right." *Ariegwe*, ¶ 110. "Courts must analyze a defendant's response to delay 'based on the surrounding circumstances—such as the timeliness, persistence, and sincerity of the objections, [and] the reasons for [any] acquiescence.'" *Kirn*, ¶ 32 (citing *Ariegwe*, ¶ 110). "Conduct by an accused that demonstrates a 'desire to avoid trial' weighs heavily against him in a speedy trial analysis." *Brekke*, ¶ 18 (citing *Stops*, ¶ 40).

¶27 Larson argues this factor weighs in his favor because, citing *State v. Kurtz*, 2019 MT 127, 396 Mont. 80, 443 P.3d 479, "a defendant does not abandon his right to a speedy trial when he engages in plea negotiations." *Kurtz*, ¶ 27. Larson notes that in *Kurtz*, we rejected the idea that a defendant gives up his right to a speedy trial simply by moving to vacate a trial date and schedule for a change of plea hearing, even when the defendant ultimately does not go through with the plea. *See Kurtz*, ¶¶ 27-29.

¶28 However, the circumstances supporting the *Kurtz* holding are easily distinguishable from those here. In *Kurtz*, the defendant requested that the district court vacate a January 4, 2016 trial date and set a change of plea hearing, but no hearing was scheduled, the original trial date passed without action, and it was the State that later moved to reset trial on

15

April 12, 2016, prompting a new trial date of May 23, 2016. *Kurtz*, ¶ 4. We explained that "once Kurtz filed his December 21, 2015 motion to vacate the January trial date and set a change of plea hearing, it was the State's responsibility to schedule that hearing," and that Kurtz "did not engage in any tactics to further [this] delay." *Kurtz*, ¶ 22.

¶29 Here, by contrast, the District Court promptly granted Larson's December 22, 2022 motion to vacate the January 9, 2023 trial date and immediately scheduled a change of plea hearing for three days later, on January 12, 2023. Unlike *Kurtz*, there was no period of limbo in which the case sat unresolved with the State bearing the burden to act; instead, after Larson vacated his priority trial date, the matter remained actively in his hands. The District Court had set a near-immediate change of plea hearing, only three days later than the original January 9, 2023 trial setting. When Larson failed to accept the plea agreement on January 12 (or the extended January 19 date), the resulting postponement stemmed directly from his actions, not from any failure by the State to timely reschedule. The State had no further steps to take while waiting for Larson to decide on the pending plea; the ball remained entirely in Larson's court, and his failure to resolve the case at the scheduled hearings caused the trial to be pushed beyond the original setting.

¶30 Moreover, Larson's conduct throughout the proceedings further undermines any claim of a genuine desire for a speedy trial. As discussed above, Larson moved to vacate the January 9, 2023 trial date for which he held first priority for a change of plea. He then requested and received an additional week, from January 12 to January 19, 2023, to consider and accept the plea agreement, yet failed to do so. Larson also did not object to having several of his cases all scheduled for trial on January 9, 2023, despite knowing that

16

only one could proceed and that the other would be bumped. In contrast, the State stood ready to proceed at every available opportunity and caused no deliberate or negligent delay in the case (besides the attributable institutional delay). *See Daly*, ¶ 12. Larson's pattern of requesting continuances, vacating priority settings for plea discussions he did not complete, and acquiescing in overlapping trial dates reflects "gamesmanship," as the District Court put it, rather than a sincere desire to be brought to trial promptly and weighs heavily against Larson. *See Brekke*, ¶ 18.

**Factor Four: prejudice to the accused**

¶31 "Finally, courts assess whether an accused was prejudiced by the delay by considering three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern caused by the presence of unresolved criminal charges; and (3) limiting the possibility that the accused's ability to present an effective defense will be impaired." *Daly*, ¶ 25 (citing *Hesse*, ¶ 15). As a result of the lengthy delay determined under the first factor, the State must make a persuasive showing that the pretrial delay did not prejudice Larson, and the quantum of proof required from Larson is correspondingly lower. *See Ariegwe*, ¶ 123.

*a. Oppressive Pretrial Incarceration*

¶32 Courts consider whether pretrial incarceration was oppressive in light of all of the circumstances of the incarceration. *Ariegwe*, ¶ 111. While bail and inability to post it may be a relevant circumstance to determine oppressive pretrial incarceration, it is not dispositive. *See Couture*, ¶ 60. As the length of incarceration increases so does the likelihood of prejudice against the defendant. *Kurtz*, ¶ 32 (citation omitted). We consider

17

the duration of incarceration, complexity of the charged offenses, whether the defendant engaged in any misconduct while incarcerated, and the conditions of incarceration to determine if pretrial incarceration was oppressive. *Ariegwe*, ¶ 113. The length of pretrial incarceration may be oppressive for a relatively simple offense but not so for a complex charge. *See Couture*, ¶ 59 (comparing pretrial incarceration for a DUI and deliberate homicide).

¶33 Larson argues that his case involves a relatively simple DUI offense, which supports finding oppressive pretrial incarceration. He also notes that he repeatedly sought bail reductions, which weighs in favor of finding oppressive pretrial incarceration. However, as Larson notes, on November 2, 2022, Larson became an inmate with the Department of Corrections on a separate matter, leading to his designation for release on his own recognizance herein, and thus any incarceration after November 2 cannot be attributed to the present case. This leaves only 229 days of pretrial incarceration attributable here, between March 18, 2022, and November 2, 2022.

¶34 On balance, as Larson concedes and we agree, his pretrial incarceration was not oppressive. As for his bail setting, the District Court set Larson's bail high due to the danger he posed to the community and kept bail high despite Larson's various requests for bail reductions for obvious reasons. Accordingly, although the length of the delay imposes an elevated burden on the State to demonstrate a lack of prejudice, the record here provides no evidence that Larson's pretrial incarceration was oppressive. Larson does not complain of any harsh or unusual conditions of confinement, but merely asserts the fact of incarceration itself, which, given the serious nature of the charges, the public-safety risks

18

he posed, his own other pending matters before the District Court, and the limited attributable period before his DOC custody on a separate matter, does not rise to the level of oppressive pretrial tactics.

*b. Anxiety and Concern*

¶35 "The second interest—minimizing anxiety and concern caused by the presence of unresolved criminal charges—is more subjective, not to mention difficult to demonstrate." *Ariegwe*, ¶ 95. "A certain amount of anxiety and concern is inherent in being accused of a crime. Also, the speedy trial guarantee is designed to shorten the disruption to the accused's life, not to eliminate it altogether." *Zimmerman*, ¶ 32. "[T]he critical question is whether the delay in bringing the accused to trial *unduly prolonged* the disruption of his life or *aggravated* the anxiety and concern that are inherent in being accused of a crime." *Zimmerman*, ¶ 32 (citations omitted, emphasis in original).

¶36 Larson argues that the delay caused him to lose housing and employment opportunities and negatively affected his mental and physical health while in county jail awaiting trial. The District Court deemed concerns about housing and employment irrelevant after Larson became a DOC inmate on November 2, 2022. However, we must consider the full period of pretrial incarceration, including the time before his DOC custody began. *See Zimmerman*, ¶ 34. The extended delay beyond the 200-day trigger date increases the presumption of prejudice. *See Daly*, ¶ 11. Nevertheless, Larson offers no specific evidence that the public accusation of four felonies and several misdemeanors, followed by his subsequent DOC incarceration in a separate matter, prolonged the disruption to his life or aggravated his anxiety and concern beyond that inherent in being

19

accused of serious crimes. *See Hesse*, ¶ 20 (explaining that generalized claims of anxiety are insufficient to show prejudice from pretrial delay).

### c. Impaired Defense

¶37 "The most important" prejudice consideration "is impairment to the defense, because the inability of an accused to adequately prepare his case skews the fairness of the entire system." *State v. Spang*, 2007 MT 54, ¶ 12, 336 Mont. 184, 153 P.3d 646 (citation omitted). Under the impairment of defense analysis, courts consider "whether the delay has weakened the accused's ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Ariegwe*, ¶ 111. Larson presented no argument to the District Court that the delay impaired his defense, and nothing in the record supports such a claim. Larson's defense was not impaired due to pretrial delay.

**Balancing the Four Factors**

¶38 Whether the accused has been deprived of their right to a speedy trial is determined by balancing each of the four *Ariegwe* factors. *Ariegwe*, ¶ 112. Under the first factor, the total pretrial delay of 476 days, 276 days beyond the 200-day presumptive prejudice trigger, weighs in Larson's favor. Of those 476 days, 350 are institutional and attributable to the State and 126 days are attributable to Larson. However, as discussed, 137 of the 350 institutional delay days, approximately 40%, stemmed from either (1) Larson's own higher-priority case proceeding to trial on October 31 pursuant to scheduling of his cases to which he consented, or (2) Larson's unsuccessful plea attempt on January 12, followed by the District Court's prioritization of another defendant's case on May 1 (a defendant who had caused no significant delays). The State caused no delay due to negligence or

20

lack of diligence, *see Ariegwe*, ¶ 108, and Larson caused 126 days of delay, or about 25% of the total delay. The second factor thus favors the State. Under the third factor, Larson's responses to the delays, including scheduling several of his cases for trial on the same day knowing only one would proceed and his request to vacate a trial for which he had clear priority and engage in plea discussion that never resulted in resolution, fail to demonstrate that Larson "actually wanted to be brought to trial promptly" and weigh heavily against him. *See Ariegwe*, ¶ 76; *Brekke*, ¶ 18. Under the fourth factor, although the 276-day delay beyond the 200-day threshold supports a presumption that Larson was prejudiced, the record shows Larson suffered no prejudice by the pretrial delay. Larson became a DOC inmate in a separate matter in November 2022, about halfway through the total delay in this case, limiting attributable pretrial incarceration in this case to 226 days. Larson presented no evidence of an impaired defense or undue anxiety or suffering beyond that inherent in being accused. The fourth factor also weighs in favor of the State. On balance, weighing these considerations together, we conclude that the State did not violate Larson's right to a speedy trial.

¶39 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA